IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE SHAMROCK COMPANIES, INC.<br>24090 Detroit Road<br>Westlake, Ohio 44145-1513,<br><br>          Plaintiff,<br><br>vs.<br><br>MATTHEW T. THEIS<br>1049 Jensen Drive<br>Lake Forest, IL 60045,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br><br><br><br><br><br><br>**VERIFIED COMPLAINT FOR<br>INJUNCTIVE AND MONETARY<br>RELIEF**<br><br>**(JURY DEMAND ENDORSED HEREON)** |

Plaintiff The Shamrock Companies, Inc. ("Shamrock"), by and through the undersigned counsel, for its Verified Complaint for Injunctive and Monetary Relief ("Complaint"), states as follows:

## PARTIES

1. Shamrock is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business at 24090 Detroit Road, Westlake, Ohio 44145.

2. Defendant Matthew Theis ("Theis") is a citizen of the State of Illinois and resides in Lake County, Illinois. Theis is the former Chief Revenue Officer for Shamrock who managed many client relationships for Shamrock. Theis is now employed by a competitor of Shamrock in a similar capacity with the identical title.

## JURISDICTION AND VENUE

3. This Court has jurisdictions over the subject matter of this action pursuant to 28 U.S.C. § 1332, because diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction pursuant to 28 U.S.C. §

1331, because this Court has original jurisdiction over Shamrock's claim under the federal Defend Trade Secrets Act, pursuant to 18 U.S.C. § 1836(b) and (c).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because it is the place where a substantial part of the events or omissions giving rise to one or more of the claims in the Complaint occurred.

## FACTS

**A.      About Shamrock**

5. Shamrock is engaged in the business of providing integrated marketing services to customers by creating, sourcing, and/or providing printed products, promotional products and apparel, personal protective equipment-related products, technology, website and ecommerce services, fulfillment, and other co-op management and marketing-related services. In furtherance of its business activities, Shamrock employs account representatives to sell to and service the needs of its customers.

6. Shamrock employs a number of account representatives to solicit, manage, and grow sales throughout its market footprint. Shamrock's account representatives are each responsible for developing customer relationships, selling and marketing Shamrock's products and services, preparing price quotes for customers, establishing pricing, and managing Shamrock's customer relationships.

7. As a result of their responsibilities, Shamrock's account representatives are privy to confidential information and trade secrets owned by Shamrock including, but not limited to, information regarding the negotiated pricing charged particular customers, profit margin targets and requirements, vendor pricing, production costs, customer contact identities, and customer purchasing volumes (collectively "<u>Confidential Information and Trade Secrets</u>"). Shamrock's

2

Confidential Information and Trade Secrets include details regarding its customer needs and preferences, the supply and timing requirements necessary to service its customers, the costs of providing its products and services, customer specific pricing, and the profit margins targeted and obtained by Shamrock, all of which are not generally known to and are not readily ascertainable by persons who could obtain economic value from its disclosure or use.

8. Shamrock takes reasonable precautions to maintain the secrecy of its Confidential Information and Trade Secrets described in paragraph 7 by limiting access to those employees having a need to know the same. Shamrock's Confidential Information and Trade Secrets are stored electronically on a secure computer server and only those employees having the need to work with specific portions of Shamrock's Confidential Information and Trade Secrets have access to those portions through password protected access. In addition, Shamrock's employees, like Theis, who develop some of Shamrock's Confidential Information and Trade Secrets as part of their duties for Shamrock sign agreements or are subject to other confidentiality requirements to not use or disclose Shamrock's Confidential Information and Trade Secrets. In addition, Shamrock keeps its internal hard copy documents containing Shamrock's Confidential Information and Trade Secrets stored in secure areas of Shamrock's offices, and visitor access is tightly monitored and controlled.

9. Shamrock would suffer extreme and unfair competitive harm if its Confidential Information and Trade Secrets were to be obtained by, or used on behalf of, a competitor, or if the goodwill it had built using Shamrock's Confidential Information and Trade Secrets were to be used by any of its competitors.

93F68EC3-AD0C-43F9-86CE-7C67AB3FA89A — 2022/02/11 06:47:45 -8:00 — Remote Notary

DocVerify ID: 93F68EC3-AD0C-43F9-86CE-7C67AB3FA89A
www.docverify.com
Page 3 of 17
37C67AB3FA89A

**B.      Theis's Employment with Shamrock**

10.     On or about January 16, 1995, Shamrock hired Theis in the role of account representative.  Over the course of his tenure with Shamrock, Theis developed into one of the company's top sales employees, eventually receiving the title of Chief Revenue Officer before his abrupt resignation in December 2021.  Theis was the principal contact with a number of Shamrock's most significant customers during his employment.

11.     Prior to his resignation, Theis's job duties included (a) marketing and selling Shamrock's products and services to Shamrock's existing and prospective customers, (b) providing marketing, business development and related services to Shamrock, (c) developing and maintaining relationships with Shamrock's existing and prospective customers (d) developing new customer accounts for Shamrock, (e) developing, creating, and working with Shamrock's new supply chain partnerships, (f) working directly with Shamrock's existing supply chain partnerships, and (g) providing other related services to expand Shamrock's market share.

12.     Incident to his employment, Theis executed an Employment Separation Agreement (the "Agreement") with Shamrock (defined as the "Corporation" for purposes of the Agreement), a true and accurate copy of which is attached hereto as **Exhibit A**.

13.     In the Agreement, Theis acknowledged that Shamrock possesses confidential information, has shared that confidential information with him to enable him to carry out his job duties, and that irreparable harm would result if he would ever use or disclose Shamrock's confidential information outside Shamrock or if he would ever solicit or divert Shamrock's customers, prospective customers, suppliers, vendors, acquisition targets, or employees to a competitor of Shamrock.

14. Section 3(e) of the Agreement contains a nondisclosure provision, which prohibits Theis from disclosing or using Shamrock's Confidential Information and Trade Secrets, except as authorized by Shamrock, providing, in pertinent part:

> Employee shall not, without the prior written consent of the Board of Directors of the Corporation, directly or indirectly, use, divulge, furnish or make accessible to any company, person or other entity, any Confidential Information, but instead shall keep all confidential information strictly and absolutely confidential.

15. Section 3(b) of the Agreement contains a non-competition provision, which prohibits Theis for a period of twenty-four (24) months following the separation of his employment from, among other things, directly or indirectly calling for the making of investments or the rendition of services competitive to Shamrock within a geographic radius of one hundred (100) miles of each of Shamrock's offices, providing, in pertinent part:

> For a period of twenty-four (24) months after employment ends, for whatever reason, neither Employee . . . shall, without prior written consent of the Board of Directors of the Corporation, participate or engage in, directly or indirectly, as an owner, partner, shareholder, employee, officer, director, independent contractor, consultant, advisor or in any other capacity, calling for the making of investments or the rendition of services which is competitive with the business conducted by the Corporation (as defined in Paragraph 3(f) below) within a radius of one hundred (100) miles of each of the Corporation's offices, which exist at the end of Employee's employment.

16. Sections 3(a), (c), and (d) of the Agreement contain non-solicitation provisions that prohibit Theis for a period of twenty-four (24) months following the separation of his employment from, among other things, directly or indirectly: (1) seeking to divert any supplier, vendor, customer, acquisition target, or other person or entity from continuing to do business with or entering into business with Shamrock; (2) soliciting any customers with whom Shamrock did business within the twenty-four (24) months prior to the end of Theis's employment; (3) soliciting any entity known by Theis to be a prospective customer of Shamrock at the end of Theis's employment; and (4) soliciting any employee of Shamrock to leave such employment

and join or become affiliated with any business which is competitive with the business of Shamrock.

17. Section 7 of the Agreement contains a remedies provision, which provides that the foregoing nondisclosure, non-competition, and non-solicitation provisions are reasonable and necessary to protect Shamrock's legitimate business interests and that, in the event of a breach of the Agreement, Shamrock shall be entitled to immediate injunctive relief in addition to all other legal and equitable remedies that Shamrock may have, providing, in pertinent part:

> The Employee acknowledges that in view of the complex and personal relationships with existing and prospective customers, vendors, suppliers and other business relationships which underlie the business in which the Corporation is engaged, and which are fostered over a considerable period of time, the restrictive agreements and covenants contained herein are fair, reasonable and necessary in order to protect the Corporation's legitimate interest; and, that any violation would result in irreparable injury to the Corporation. The employee therefore agrees that in the event of any violation of the restrictive agreements and covenants contained herein, the Corporation shall be authorized and entitled to secure from any court of competent jurisdictions, such equitable relief as shall be necessary to prevent such violations, including without limitation, preliminary and permanent injunctive relief, as well as damages and equitable accounting of all earnings, profits and other benefits arising from such violation which rights shall be cumulative and in addition to any other rights or remedies to which the Corporation may be legally entitled.

18. Section 8(d) of the Agreement provides that the Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

19. During Theis's employment with Shamrock, Shamrock provided Theis with extensive training as to how to market its services and products and manage customer relationships. Shamrock also provided Theis with access to its Confidential Information and Trade Secrets, including its customer pricing, profit margin targets, vendor pricing, production costs, customer contact identity, and customer purchasing volumes.

C.  **Theis's Compensation Structure**

20. During his employment with Shamrock, Theis was paid on a commission basis in accordance with Shamrock's Sales Policy Manual, a true and accurate copy of which is attached hereto as **Exhibit B**.

21. Shamrock's Sales Policy Manual provides that employees are only entitled to commissions on sales for which Shamrock received customer payments. In other words, Shamrock's employees do not earn their commissions until Shamrock is paid.

22. The Sales Policy Manual further provides that customer sales that remain unpaid will have the open balance fully deducted from or charged back against the employee's commissions.

23. Additionally, the Sales Policy Manual provides that all unbilled costs will be charged back against the employee's commissions.

24. The Sales Policy Manual also provides that any advance payments of commissions to an employee will be treated as a draw balance, requiring charge backs against future earned commissions, a secured promissory note, or a direct payment from the employee.

25. As one of Shamrock's top sales employees, prior to his resignation Theis received over $1,000,000 in commissions annually.

D.  **Shamrock's Overpayments to Theis**

26. At the time of his resignation, Theis had a number of chargebacks for his accounts that, due to his resignation, could not be covered by future earned commissions and, therefore, resulted in Theis having a significant commission advance being owed to Shamrock.

27. Specifically, Theis owes Shamrock reimbursement for $1,192,000 of commissions paid to Theis for sales made to his Humana account and which Humana had paid

DocVerify ID: 93F68EC3-AD0C-43F9-86CE-7C67AB3FA89A
www.docverify.com
93F68EC3-AD0C-43F9-86CE-7C67AB3FA89A --- 2022/02/11 06:47:45 -8:00 --- Remote Notary

Shamrock in full, but which sales were ultimately rejected due to labeling issues. Because the products sold to Humana were rejected and Humana demanded a refund, there was no revenue, no gross margin, no payments received, no commissions earned, and the funds paid to Theis for the sale became an outstanding commission advance owed to Shamrock.

28. Theis owes Shamrock reimbursement for $280,000 of uncovered cost chargebacks related to unbilled vendor payments to Trade with Texas and Glove King, LLC, which ultimately turned out to be fraudulent transactions resulting in an outstanding commission advance owed to Shamrock.

29. Theis also owes Shamrock reimbursement for $16,600 for invoice adjustments and customer credits issued to his Charter/Spectrum client account resulting from his negligence in failing to expediently respond to a client's terminating certain program orders resulting in an outstanding commission advance owed to Shamrock.

30. Additionally, Theis owes Shamrock reimbursement for $30,000 in uncovered cost chargebacks related to unbilled vendor costs paid to Mike Oliver and Next Point Marketing, Inc., resulting in an outstanding commission advance owed to Shamrock

31. Finally, Theis owes Shamrock reimbursement for $4,862.68 in unauthorized personal purchases he placed with Shamrock's vendor "Links Unlimited" shortly after announcing his resignation, and had shipped to his home address, using Shamrock's corporate account.

E. **Theis Resigns and Joins a Direct Competitor**

32. On Friday, December 17, 2021, Theis voluntarily resigned his employment with Shamrock, providing two weeks' advance notice that his anticipated final day of employment would be December 31, 2021.

33. While he was still employed with Shamrock, Theis entered the contact information for his clients and prospective clients, which also constitutes Shamrock's Confidential Information and Trade Secrets, into his own personal contact database and has not returned to Shamrock such Confidential Information and Trade Secrets.

34. On Monday, December 20, 2021, Shamrock, through its legal counsel, sent Theis a letter reminding him of his post-employment obligations to Shamrock pursuant to the Agreement, his obligation to assist in the transitioning of his customer accounts, and his obligation to reimburse Shamrock for overpaid commissions. A true and accurate copy of the December 20, 2021-letter is attached hereto as **Exhibit C**.

35. Despite the December 20, 2021-letter, Theis proceeded to join npn360, Inc., a direct competitor of Shamrock, in breach of his post-employment obligations in the Agreement.

36. Theis joined npn360, located at 2801 Lakeside Drive, Bannockburn, IL 60015, well within the 100-mile restricted radius of Shamrock's Buffalo Grove, Illinois office.

37. In joining npn360, Theis took on the role of Chief Revenue Officer, which is the same title he had with Shamrock.

38. On January 26, 2022, Shamrock, through counsel, sent a letter to Theis's counsel demanding Theis repay Shamrock $4,862.68 for certain personal items that he purchased on December 20 and 22, 2021 using Shamrock's corporate account, and which he had shipped to his home address. A true and accurate copy of the January 26, 2022-letter is attached hereto as **Exhibit D**.

39. On February 7, 2022, Shamrock, through counsel, sent a second letter to counsel for Theis informing him that it was aware of Theis's new employment with npn360 and intended

9

to enforce its legal rights with respect to Theis's post-employment obligations to Shamrock. A true and accurate copy of the February 7, 2022-letter is attached hereto as **Exhibit E**.

40. Despite these notices, Theis remains employed by npn360 in breach of his obligations to Shamrock and, given his identical title and similar responsibilities to npn360, Theis will inevitably disclose and use Shamrock's Confidential Information and Trade Secrets.

41. Theis's wrongful activities are causing Shamrock to suffer irreparable harm, monetary damages, and attorneys' fees as well. Unless injunctive relief is entered precluding Theis from, directly or indirectly, working for npn360 in competition with Shamrock, soliciting, interfering with, or entering into contracts with Shamrock's customers, prospective customers, suppliers, vendors, acquisition targets, or employees, Theis will inevitably disclose and use his knowledge of Shamrock's Confidential Information and Trade Secrets to compete against Shamrock.

## CAUSES OF ACTION

### COUNT ONE
**Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act ("DTSA")**
**(18 U.S.C. § 1836)**

42. Shamrock repeats and realleges each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Much of Shamrock's Confidential Information and Trade Secrets constitutes "trade secrets," as defined in the DTSA, which derive independent economic value, in part from not being known to the public or other entities and individuals who could obtain economic value from their use or disclosure.

44. Shamrock's trade secrets relate to products used in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

10

45. Shamrock has taken reasonable steps to protect the secrecy of Shamrock's trade secrets, including the trade secrets that Theis misappropriated.

46. Theis misappropriated Shamrock's trade secrets in the improper and unlawful manner as alleged herein.

47. Moreover, Theis's ability to solicit Shamrock's customers, prospective customers, suppliers, and vendors will inevitably result in the disclosure and use of Shamrock's trade secrets.

48. The actions of Theis set forth herein constitute the threatened and actual misappropriation of trade secrets in violation of the DTSA, 18 U.S.C. § 1836.

49. Theis's misappropriation was intentional, knowing, willful, malicious, fraudulent, and oppressive, thereby entitling Shamrock to an award of exemplary damages under the DTSA, pursuant to 18 U.S.C. § 1836(b)(3)(C).

50. The damage that Theis has caused Shamrock by his misappropriation of Shamrock's trade secrets will be difficult, if not impossible, to ascertain, but in any event will exceed $75,000.

51. Moreover, injunctive relief is necessary to redress fully Theis's misappropriation of Shamrock's trade secrets.

### COUNT TWO
**Trade Secret Misappropriation Under the Ohio Uniform Trade Secrets Act ("UTSA")**
**(Ohio Rev. Code § 1331.61)**

52. Shamrock repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Much of Shamrock's Confidential Information and Trade Secrets constitutes "trade secrets" as defined in the UTSA, which derive independent economic value, in part from

not being known to the public or other entities and individuals who could obtain economic value from their use or disclosure.

54. Shamrock has taken reasonable steps to protect the secrecy of Shamrock's trade secrets, including the trade secrets that Theis misappropriated.

55. Theis misappropriated Shamrock's confidential Information in the improper and unlawful manner as alleged herein.

56. Moreover, Theis's ability to solicit Shamrock's customers, prospective customers, suppliers, and vendors will inevitably result in the disclosure and use of Shamrock's trade secrets.

57. The damage that Theis has caused Shamrock by his misappropriation of Shamrock's trade secrets will be difficult, if not impossible, to ascertain, but in any event will exceed $75,000.

58. Theis's misappropriation was intentional, knowing, willful, malicious, fraudulent, and oppressive, thereby entitling Shamrock to an award of exemplary damages under the UTSA, pursuant to Ohio Rev. Code § 1333.63(B).

59. Moreover, injunctive relief is necessary to redress fully Theis's misappropriation of Shamrock's trade secrets.

## COUNT THREE
### Breach of Contract

60. Shamrock incorporates by reference the allegations contained in paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Incident to his employment with Shamrock, Theis entered into a valid and enforceable restrictive covenant agreement on July 1, 1997, the Agreement, which agreement includes obligations to refrain from disclosure of Shamrock's Confidential Information and

12

Trade Secrets, solicitation of Shamrock's customers, prospective customers, suppliers, vendors, acquisition targets, or employees, and engaging in activity competitive to Shamrock's business for a period of twenty-four months following the termination of his employment with Shamrock.

62. Shamrock fulfilled its obligations under the Agreement.

63. Notwithstanding the terms of the Agreement and without legal excuse, Theis failed to abide by his obligations under the Agreement.

64. Within weeks of his resignation from Shamrock, Theis took an identical position with a direct competitor within the restricted geographic area in direct violation of his post-employment obligations to Shamrock under the Agreement.

65. The non-competition provision in the Agreement is reasonable in scope and serves to protect Shamrock's Confidential Information and Trade Secrets and goodwill with its customers, prospective customers, suppliers, and vendors. Enforcement of the Agreement will not injure the public in any respect.

66. Theis's breach of the Agreement is causing and unless enjoined will further cause Shamrock to suffer imminent, immediate, and irreparable harm and damages.

67. As a direct and proximate result of Theis's breach of the Agreement, Shamrock has suffered damages that will be difficult, if not impossible, to ascertain, but in any event will exceed $75,000.

## COUNT FOUR
### Breach of Contract

68. Shamrock incorporates by reference the allegations contained in paragraphs 1 through 67 of the Verified Complaint as if fully set forth herein.

69. Shamrock and Theis were parties to an at-will employment contract, one term of which was that during his employment Theis would be paid earned commissions net of any outstanding commission advances and charge backs.

70. Despite Shamrock's demand, Theis has refused to repay his outstanding commission advances, which constitutes a breach of contract.

71. Shamrock has been damaged in the amount of $1,518,600 as a result of Theis's breach of contract.

## COUNT FIVE
**Unjust Enrichment**

72. Shamrock incorporates by reference the allegations contained in paragraphs 1 through 71 of the Verified Complaint as if fully set forth herein.

73. During his employment, Theis received commission advances in the amount of $1,518,600, which he did not earn and he did not return to Shamrock.

74. Theis also improperly and without authorization purchased a number of personal items using Shamrock's corporate account, which charges totaled $4,862.68.

75. Despite Shamrock's demand, Theis has refused to return the $1,518,600 in commission advances or reimburse the $4,862.68 in improper personal charges. This failure to repay such amounts has caused harm to Shamrock.

76. Theis has been unjustly enriched to the detriment of Shamrock as a result of his failure to return the commission advances and reimburse the improper charges.

## COUNT SIX
**Conversion**

77. Shamrock incorporates by reference the allegations contained in paragraphs 1 through 76 of the Verified Complaint as if fully set forth herein.

14

78. During his employment, Theis received commission advances in the amount of $1,518,600, which he did not earn.

79. Theis also improperly and without authorization purchased a number of personal items using Shamrock's corporate account, which charges totaled $4,862.68.

80. At the time of his resignation, Theis was contractually and legally obligated to repay these amounts.

81. Since his resignation from employment with Shamrock, Theis has converted, without justification or right, the $1,518,600 of commission advances and the $4,862.68 in improper personal charges by failing to repay such amount to Shamrock.

**WHEREFORE**, Shamrock demands judgment as follows:

A. With respect to Counts One and Two, that a monetary judgment be entered against Theis and in favor of Shamrock in an amount equal to all damages proved at trial and exemplary damages, and that Theis be preliminarily and permanently enjoined from using or disclosing Shamrock's trade secrets and from engaging in any business activity which would inevitably lead to the use or disclosure of Shamrock's trade secrets and to return Shamrock's trade secrets to Shamrock;

B. With respect to Count Three, that a monetary judgment be entered against Theis and in favor of Shamrock in an amount equal to all damages proved at trial and exemplary damages, and that Theis be preliminarily and permanently enjoined (i) from using or disclosing Shamrock's Confidential Information and Trade Secrets, (ii) from engaging in any business activity which would inevitably lead to the use or disclosure of Shamrock's Confidential Information and Trade Secrets, including selling, delivering, or otherwise providing any products or services competitive with those of Shamrock through npn360 or otherwise, to any person or

entity Theis learned of, met, or became aware of while employed by Shamrock, or to any person or entity which was an actual or prospective customer of Shamrock during Theis's employment with Shamrock for a period of twenty-four (24) months, (iii) from participating or engaging in, directly or indirectly, as an owner, partner, shareholder, employee, officer, director, independent contractor, consultant, advisor, or render services which is competitive with the business conducted by Shamrock within a radius of one hundred (100) miles of each of Shamrock's offices, which existed on December 31, 2021, for a period of twenty-four (24) months, and (iv) to return to Shamrock all of Shamrock's Confidential Information and Trade Secrets, including, without limitation, Theis's contact information for the customers and prospective customers he solicited while employed with Shamrock;

      C.      With respect to Counts Four, Five, and Six, that a monetary judgment be entered against Theis and in favor of Shamrock in an amount equal to all damages proven at trial;

      D.      Such further an additional relief as the Court deems just and proper.

Respectfully submitted,

*s/ Daniel J. Cianchetta*
JOSEPH N. GROSS (0056241)
DANIEL J. CIANCHETTA (0089736)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  jgross@beneschlaw.com
         dcianchetta@beneschlaw.com

*Attorneys for Plaintiff*
*The Shamrock Companies, Inc.*

## JURY DEMAND

Plaintiff The Shamrock Companies, Inc., by and through counsel, hereby demands a jury trial on all issues so triable, by the maximum number of jurors permitted by law.

>/s/ Daniel J. Cianchetta
> Daniel J. Cianchetta (0089736)
> *One of the Attorneys for Plaintiff*
> *The Shamrock Companies, Inc.*

## VERIFICATION

I, Gary Lesjak, Chief Financial Officer of The Shamrock Companies, Inc., hereby verify that the facts set forth in the foregoing Verified Complaint for Injunction and Damages are true and correct to the best of my knowledge.

*Gary A. Lesjak*
Signed on 2022/02/11 07:06:01 -8:00
**GARY A. LESJAK**

**SWORN TO BEFORE ME** and subscribed in my presence, this <u>11th</u> day of February, 2022.

*[signature]*
Signed on 2022/02/11 07:06:01 -8:00
**NOTARY PUBLIC**



**Elizabeth Kohn**
**Commission # 2019-RE-767234**
Electronic Notary Public
State of Ohio
My Comm Exp. Feb 03, 2024

Notary Stamp 2022/02/11 08:06:01 PST    F0D882678E16

Notarial act performed by audio-visual communication




# Shamrock v. Theis - Verified Complaint.pdf

| | |
|---|---|
| DocVerify ID: | 93F68EC3-AD0C-43F9-86CE-7C67AB3FA89A |
| Created: | February 11, 2022 06:47:45 -8:00 |
| Pages: | 17 |
| Remote Notary: | Yes / State: OH |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Gary A. Lesjak (GAL)**
February 11, 2022 07:06:01 -8:00 [BB521FF82D3C] [66.181.67.252]
glesjak@shamrockcompanies.net (Principal) (Personally Known)

**E-Signature Notary: Elizabeth Kohn (EAK)**
February 11, 2022 07:06:01 -8:00 [F0D882678E16] [162.248.43.210]
liz.kohn29@gmail.com
I, Elizabeth Kohn, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.

